IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FERRELL, | ) | CASE NO. 1:15 CV 1625 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BRADSHAW, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of John Ferrell for a writ of habeas corpus under 28 U.S.C.

§ 2254.[2]  Ferrell was convicted by a Cuyahoga County Court of Common Pleas jury in 2013

of rape, kidnapping, and gross sexual imposition[3] and is serving seventy-five and a half

years. He is currently incarcerated at the Richland Correctional Institution in Mansfield,

Ohio.[4]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge
Donald C. Nugent by non-document order dated August 21, 2015.

[2] ECF # 1.

[3] *Id*. at 1.

[4] http://www.drc.ohio.gov/OffenderSearch

In his petition, Ferrell raises three grounds for habeas relief.[5]  The State has filed a return of the writ arguing that the petition should be dismissed as ground one is non-cognizable and grounds two and three are without merit.[6]  Ferrell has filed a traverse.[7]

For the reasons that follow, I will recommend Ferrell's petition be dismissed in part and denied in part.

## Facts

### A.    Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[8]

In May 2013, the Cuyahoga County Grand Jury indicted Ferrell on 16 counts – eight counts of rape, four counts of kidnapping, and four counts of gross sexual imposition.[9] Eleven of the counts involved Ferrell's daughter, K.O. ("daughter"), and the remaining five counts involved Ferrell's niece, R.O.[10]  The rape and kidnapping counts carried sexual motivation and sexually violent predator specifications.[11]

---

[5] ECF # 1.

[6] ECF # 8.

[7] ECF # 11.

[8]  Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[9] ECF # 8, Attachment 1 (Transcript "Tr.") at 108.

[10] *Id*.

[11] *Id*.

Ferrell pleaded not guilty to the charges, and the matter proceeded to a jury trial.[12] The state presented several witnesses at trial, including his daughter and R.O., who testified as to the sexual offenses that Ferrell committed against them.[13]

According to the daughter's testimony, Ferrell first inappropriately "touched" her when she was around five years old.[14]  Approximately nine years later, Ferrell, a commercial truck driver, committed several other sexual offenses against daughter at a rest stop in "New York or Pennsylvania" during one of his delivery trips where daughter accompanied him.[15]

Although daughter "never went on any truck trips" with Ferrell again, she did not initially report the incidents because she was "scared."[16]  But, daughter testified that months later, she confided in two cousins with whom she was close, and R.O., another cousin who was more like a "sister," and eventually reported the incidents to her high school guidance counselor.[17]  The counselor in turn reported the incident to the police and the Cuyahoga County Department of Children and Family Services ("CCDCFS").[18]

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 108-109.

[16] *Id.* at 109.

[17] *Id.*

[18] *Id.*

According to R.O.'s testimony, daughter told her about the incidents with Ferrell sometime in 2011 or 2012.[19] In response to daughter's revelations, R.O. stated, "Wow, that's really messed up, and it happened to me too."  R.O. testified that when she was younger she visited her cousins' home in Cleveland, Ohio.[20]  Ferrell removed her from a bunk bed during the night and took her to the basement where he "licked" and "rubbed her vagina."  R.O. further testified that she was only six or seven years old when the incident occurred.[21]  R.O. recalled another incident that occurred when Ferrell and his girlfriend, Rachel, were babysitting her at her home on Irma Avenue, also in Cleveland.[22]  Ferrell took her into a bedroom and "rubbed his penis on her vagina."  Afterwards, Rachel came into the room and taught her a prayer.[23]  R.O. testified that she finally decided to come forward and reported the incidents after daughter "ended up coming out with it." [24]

Rachel Smith, Ferrell's ex-girlfriend, testified that she remembered the occasion when she and Ferrell babysat R.O.[25]  Prior to seeing R.O. upset, Smith observed Ferrell exit R.O.'s

---

[19] *Id*.

[20] *Id*. at 109-110.

[21] *Id* at 110.

[22] *Id*.

[23] *Id.*

[24] *Id*.

[25] *Id*.

-4-

bedroom, where the door had been previously closed.[26]  Smith stated that R.O. had tears in her eyes and looked sad.[27]  After R.O. refused to tell Smith what was bothering her; she then prayed with R.O.[28]

The state also presented several other witnesses, including daughter's mother and siblings, who corroborated aspects of daughter's testimony.[29] The state further offered testimony to explain the police's investigation and the treatment provided to daughter and R.O. with respect to the CDCFS's investigation of the allegations.[30]

At the end of the state's case, the state moved to nolle two of the rape counts and one count of gross sexual imposition relating to the daughter.[31]   The jury ultimately convicted Ferrell of five counts of rape, one count of kidnapping, and one count of gross sexual imposition for acts committed against daughter.[32] The jury further found Ferrell not guilty of rape against R.O. but guilty of the lesser included offense of gross sexual imposition and

---

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *Id*. at 111.

[32] *Id*.

guilty of kidnapping and another count of gross sexual imposition.[33]  Prior to sentencing, the state moved to dismiss the sexually violent specifications attached to the counts.[34]

At sentencing, the trial court merged as allied offenses the following:  Count 1 (rape) and Count 2 (kidnapping) – the state elected to proceed on the rape count; Count 7 (rape) and Count 11 (kidnapping) – the state elected to proceed on the rape count; Count 12 (lesser included offense of gross sexual imposition), Count 13 (gross sexual imposition), and Count 14 (kidnapping) – the state elected to proceed on the kidnapping count; and Count 15 (gross sexual imposition) and Count 16 (kidnapping) – the state elected to proceed on the kidnapping count.[35]  The trial court imposed a prison term on each count, ordering that the counts run consecutively for a total of 75.5 years in prison.

## B.  Direct Appeal

### 1.  *Ohio court of appeals*

Ferrell, through new counsel, filed a timely[36] notice of appeal[37] with the Ohio Court of Appeals.  In his brief, Ferrell raised five assignments of error:

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36]  Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed.  *See Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007) (unreported case).

[37]  Ferrell's conviction and sentence were journalized on November 18, 2013 (*id.* at 25) and the notice of appeal was filed on November 22, 2013. *Id.* at 27.

1.     The jury found, against the manifest weight of the evidence, that the appellant committed the acts alleged in the indictment.

2.     Because there was insufficient evidence to show venue was proper, the trial court erred as a matter of law in failing to dismiss counts Three, Four, Five. Six, Seven, and Eleven as set forth in the indictment.

    A.     There was insufficient evidence adduced at trial to show that Mr. Ferrell engaged in a "Course of Criminal Conduct."

    B.     There was insufficient evidence adduced at trial to establish that any essential element of the offense charged in Counts Three, Four, Five, Six, Seven, and Eleven occurred in Cuyahoga County.

3.     Offenses set forth in Counts Three, Four, Five and Six are allied offenses of similar import and should have been merged for sentencing purposes.

4.     Appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article I, Section 10, Ohio Constitution.

5.     The trial court erred by imposing consecutive sentences.[38]

The state filed a brief in response.[39]  The Ohio appeals court affirmed the judgment of the lower court as to assignments of error 1-4, but sustained assignment of error 5, finding that the trial had failed to make a finding to support the imposition of consecutive sentences.[40]

---

[38] *Id*. at 36.

[39] *Id.* at 70.

[40] *Id.* at 106.

### 2.    *Remanded resentencing*

Pursuant to the Ohio Court of Appeals' remand of his case, Ferrell filed a motion to supplement the record at resentencing with a sentencing memorandum.  Ferrell was appointed counsel and his remand hearing was scheduled for October 20, 2015.[41]  On November 10, 2015, the trial court issued a sentencing entry imposing the same sentence upon Ferrell and setting forth the required findings for consecutive sentences.[42]

### 3.    *The Supreme Court of Ohio*

Ferrell, *pro se*, thereupon filed a timely[43] notice of appeal with the Ohio Supreme Court.[44] In his brief in support of jurisdiction, he raised the following proposition of law:

> 1.    When an appellate court affirms venue on an erroneous assertion of similarities between crimes, and fails to address or consider the considerable length of time between the alleged conduct, appellant is denied due process of law under the Fourteenth Amendment to the United States Constitution.[45]

---

[41] *Id*. at 282.

[42] https://cpdocket.cp.cuyahogacounty.us/CR_CaseInformation_Summary.aspx.cr-13-574239A.

[43]  *See* Ohio S. Ct. Prac. R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case).  Here, the appellate judgment was entered on October 2, 2014, and the notice of appeal filed in the Supreme Court on October 24, 2014.

[44] Tr. at 128.

[45] *Id.* at 132.

The state opposed jurisdiction.[46]   On March 25, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal under to S.Ct.Prac.R. 7.08(B)(4).[47]

**4.     *Application to reopen appeal pursuant to Ohio App.R.26(B)***

On November 7, 2014, Ferrell, *pro se*, filed an application with the Eighth District Court of Appeals to reopen his appeal pursuant to Ohio App. R. 26(B).[48] In his application, Ferrell raised the following two assignments of error:

> 1.     Ferrell was denied effective assistance of appellate counsel when counsel failed to raise trial counsel's failure to object to improper opinion testimony by an expert witness, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution.[49]

> 2.     The trial court erred by allowing a social worker to testify she believed the complaining witness was a victim if sexual abuse in violation of due process as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article I, Section 16 of the Ohio Constitution.[50]

The state filed an opposition brief to the application for reopening.[51]   Ferrell filed a reply.[52]   On April 15, 2015, the court of appeals denied Ferrell's application.[53]

---

[46] *Id*. at 169.

[47] *Id*. at 180.

[48] *Id*. at 181.

[49] *Id*. at 183.

[50] *Id*. at 186.

[51] *Id*. at 210.

[52] *Id*. at 219.

[53] *Id*. at 229-42.

On May 8, 2015, Ferrell, *pro se*, filed a notice of appeal with the Ohio Supreme Court.[54]  In his memorandum in support of jurisdiction, Ferrell set forth the following propositions of law:

1.  When appellate counsel fails to raise trial counsel's failure to object to improper opinion testimony, appellant is denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

2.  When the trial court allows a social worker to testify she believed the complaining witness was a victim of sexual abuse, solely on the alleged victim's allegations, a defendant is denied due process of law as guaranteed under the Fourteenth Amendment to the United States Constitution.[55]

The State waived a response.[56]  On July 8, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).[57]

---

[54] *Id*. at 243.

[55] *Id*. at 246.

[56] *Id*. at 275.

[57] *Id*. at 276.

**C.      Petition for writ of habeas corpus**

On August 14, 2015, Ferrell, *pro se*, timely filed[58] a federal petition for habeas relief.[59]

As noted above, he raises three grounds for relief:

GROUND ONE:      Ferrell was denied due process of law under the Fourteenth Amendment to the United States Constitution when the appellate court affirmed venue on an erroneous assertion of similarities between crimes, and fails to address or consider the considerable length of time between the alleged conduct.

GROUND TWO:      Ferrell was denied the effective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, when appellate counsel failed [*Sic*] to raise trial counsel's failure to object to improper opinion testimony.

GROUND THREE: Ferrell was denied due process as guaranteed under the Fourteenth Amendment to the United States Constitution when the trial court allowed a social worker to testify she believed the complaining witness was a victim of sexual abuse, based solely on the victim's allegations.

## Analysis

**A.      Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that Ferrell is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in

---

[58]  The present petition for federal habeas relief was filed on August 14, 2015. ECF # 1. As such, it was filed within one year of the conclusion of Ferrell's direct appeal in the Ohio courts and so is timely under 28 U.S.C. § 2254(d)(1).

[59]  ECF # 1.

custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[60]

2.    There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[61]

3.    In addition, Ferrell states,[62] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[63]

4.    Moreover, subject to the procedural default arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[64]

5.    Finally, Ferrell is not represented by counsel, and has not requested the appointment of counsel,[65] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[66]

---

[60] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[61] 28 U.S.C. § 2254(d)(1);  *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[62] *See*, ECF # 1 at 9.

[63] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[64] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[65] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[66] 28 U.S.C. § 2254(e)(2).

**B.     Standards of review**

*1.     AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[67] codified

at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas

corpus.[68]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect

to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established [f]ederal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the [s]tate court proceeding.[69]

The Supreme Court teaches that this standard for review is indeed both "highly deferential"

to state court determinations,[70] and  "difficult to meet,"[71] thus, preventing petitioner and

federal court alike "from using federal habeas corpus review as a vehicle to second-guess the

reasonable decisions of state courts."[72]

---

[67] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[68]  *See* 28 U.S.C. § 2254 (2012).

[69]  28 U.S.C. § 2254(d) (2012).

[70] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[71]  *Id.* (citation omitted).

[72] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

1.    *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[73]  In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[74] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[75] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[76]  A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[77]  The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[78]  Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[79]  When no such Supreme Court holding exists the federal habeas court must deny the petition.

---

[73] *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[74]  *Brumfield v. Cain*, 135 S.Ct. 2269, 2293 (2015).

[75]  *Id.*

[76]  *Id.*

[77]  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[78]  *Id.*

[79]  *See id.*

-14-

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[80]   Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[81]   A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[82]   To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[83]   Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

2.      *"Unreasonable determination" of the facts.*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[84]   Under § 2254(e)(1), "a

---

[80]  *White v. Woodall*, 134 S.Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

[81]  *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003).

[82]  *Id.*

[83]  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

[84]  *Brumfield*, 135 S.Ct. at 2277.

determination of a factual issue made by a [s]tate court shall be presumed to be correct."[85] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[86] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review" or "by definition preclude relief,"[87] it is indeed a difficult standard to meet. "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judges."[88]

### 2. *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[89] Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[90] In such circumstances, a claim for federal habeas

---

[85] 28 U.S.C. § 2254(e)(1) (2012).

[86] *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

[87] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

[88] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

[89] 28 U.S.C. § 2254(a).

[90] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[91]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[92] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness"of a trial.[93] Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[94]

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[95] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[96] and may not second-guess a state court's interpretation of its own procedural rules.[97] Further, while in general distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[98] the Sixth Circuit has recognized that "'[e]rrors

---

[91] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[92] *Estelle*, 502 U.S. at 67-68.

[93] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[94] *Id*. at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[95] *Id.*

[96] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[97] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[98] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

-17-

that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[99]

### 3.    *Procedural default*

A claim not adjudicated on the merits by a state court is not subject to AEDPA review.[100]  Such a claim is subject to procedural default if a petitioner failed to raise it when state court remedies were still available, the petitioner violated a state procedural rule.[101]  The petitioner must afford the state courts "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[102]  This requires a petitioner to go through "one complete round" of the state's appellate review process,[103] presenting his or her claim to "*each* appropriate state court."[104]  A petitioner may not seek habeas relief then if he or she does not first "fairly present[] the substance of his [or her] federal habeas corpus claim to the state courts."[105]

---

[99] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[100] *See Harrington*, 562 U.S. at 98.

[101] *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

[102] *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted).

[103] *Boerckel*, 526 U.S. at 845.

[104] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).

[105] *West*, 790 F.3d at 697 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971) (internal quotation marks omitted).

When a state asserts a that violation of a state procedural rule is the basis for default in a federal habeas proceeding, the Sixth Circuit has long employed a four-part to test determine whether the claim is procedurally defaulted.[106]  A petitioner's violation of a state procedural rule will bar federal review if the state procedural rule satisfies the standards set out in the test:[107]

(1) "[T]here must be a state procedure in place that the petitioner failed to follow."[108]

(2) "[T]he state court must have denied consideration of the petitioner's claim on the ground of the state procedural default."[109]

(3) "[T]he state procedural rule must be an 'adequate and independent state ground,'[110] that is both 'firmly established and regularly followed.'"[111]

(4) The petitioner cannot demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice."[112]

---

[106] *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986) (outlining four-part test); *see Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (applying test post-AEDPA).

[107] *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008).

[108] *Id.* (citing *Maupin*, 785 F.2d at 138).

[109] *Id.*

[110] *Id.* (quoting *Maupin*, 785 F.2d at 138). ("A state procedural rule is an independent ground when it does not rely on federal law.") (citing *Coleman v. Thompson*, 501 U.S. 722, 732).

[111] *Id.* (citation omitted).

[112] *Id.* (quoting *Coleman*, 501 U.S. at 750).

-19-

In order to show "cause" for the default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[113]  In order to show "prejudice" for the default, the petitioner must show that the errors at trial "worked to [his or her] *actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."[114]

Additionally, "a credible showing of actual innocense" may also excuse an otherwise defaulted claim, and effectively allow a petitioner to seek review.[115]

Notwithstanding these elements, the Supreme Court has held that a federal habeas court need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[116]

---

[113]  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[114]  *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

[115]  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013); *see Schulp v. Delo*, 513 U.S. 298, 324 (1995) (explaining that a "credible" claim requires "new reliable evidence" and factual innocence beyond legal insufficiency).

[116]  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) ("[O]n occasion [the Sixth Circuit] has reached beyond the procedural-default analysis to address the underlying claim on the merits when it presents a more straightforward ground for decision.") (citation omitted).

### 4.    *Ineffective assistance of counsel*

In *Higgins v. Renico*,[117] the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[118]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[119]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test.  It explained seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
>
> "Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible

---

[117] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[118] *Strickland v. Washington*, 466 U.S. 668 (1984).

[119] *Higgins*, 470 F.3d at 631.

-21-

options." Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference. Indeed, such strategic choices are virtually unchallengeable. As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[120]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

> Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. In evaluating the prejudice

---

[120] *Id.* at 631-32 (internal citations omitted).

suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings."  Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt."  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury."  A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[121]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[122]

---

[121] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[122] *Id.* at 631 n.3.

## C.     Application of standards

1.     *Ground one – claiming due process violations based on his trial's venue – should be dismissed as a noncognizable state-law claim.*

In his first ground for relief, Ferrell claims that he was denied due process under the Fourteenth Amendment because Cuyahoga County, Ohio, was a not a proper venue for his trial.[123]   Specifically, he argues that under Ohio law, he should not have been tried in Cuyahoga County for certain charges involving his daughter because they were based on conduct that allegedly occurred outside of Ohio and years after the other alleged offenses against her.[124]  The State contends that this claim is not cognizable on federal habeas review because there is no federal constitutional right to a particular venue for criminal trials.[125]

The State is correct that this claim is not cognizable on habeas.  Although the "vicinage" clause of the Sixth Amendment guarantees the right to be tried by a jury of the district in which the crime has been committed, this right applies only to federal criminal trials, and the Fourteenth Amendment did not extend the vicinage clause to state criminal trials.[126]  Even in a federal criminal trial, failure to establish venue is not grounds for federal habeas relief, because, "in the absence of any allegation of bad faith on the part of the

---

[123] ECF # 1, Attachment 1 at 9-12.

[124] *Id.*

[125] ECF # 8 at 10-11.

[126] *Caudill v. Scott*, 857 F.2d 344, 345–46 (6th Cir. 1988).

-24-

Government or prejudice to the defendant, improper venue will not ordinarily result in a 'miscarriage of justice,' and presents no extraordinary need for post-conviction relief."[127]

Moreover, to the extent that Ferrell argues that Ohio law creates an obligation on the part of the prosecutor to establish venue, such a claim also is not cognizable in this habeas proceeding.  As noted above, a federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States.[128]  A federal court cannot issue a writ of habeas corpus "on the basis of a perceived error of state law."[129]

Accordingly, Ferrell has not established that his federal constitutional rights were violated by any failure to establish venue, and his first claim for habeas relief should be dismissed.

2.     *Grounds two and three – asserting ineffective assistance of appellate counsel – should be denied on the merits because the Ohio appellate court's decision neither contravened, nor misapplied, Supreme Court precedent.*

In his second and third grounds for relief, Ferrell claims that his appellate counsel provided constitutionally ineffective assistance.  He complains that counsel failed to raise two claims on direct appeal:  (1) that his trial counsel rendered ineffective assistance when

---

[127] *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978) (finding claim of improper venue not cognizable on habeas in context of § 2255 proceeding).

[128] 28 U.S.C. § 2254(a).

[129] *Pulley v. Harris*, 465 U.S. 37, 41(1984).

he failed to object to allegedly improper opinion testimony;[130] and (2) that the trial court erred in allowing a social worker to testify about her finding that sexual abuse had occurred.[131]  The State contends both appellate ineffective-assistance claims lack merit.[132]

A defendant is entitled to effective assistance of counsel in his first appeal as a matter of right.[133]  The two-part test for claims of ineffective assistance of trial counsel, enunciated in *Strickland v. Washington*,[134] applies to claims of ineffective assistance of appellate counsel.[135]  Thus, Ferrell must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable.[136]

---

[130] ECF # 1, Attachment 1 at 12-17.

[131] *Id.* at 17-24.  The State argues that Ferrell's third ground also could be construed as asserting the underlying claim of trial-court error rather than appellate counsel ineffective assistance, in which case, the claim would be procedurally defaulted as never having been presented to state courts.  ECF # 8 at 22-23.  Read in context, I construe the claim to allege ineffective assistance of appellate counsel.  *See Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 1972) (pleadings of petitions drafted by pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed).  Even if he does assert the trial-court error claim, however, the State is correct that it is procedurally defaulted.

[132] ECF # 8 at 15-22.

[133] *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

[134] *Strickland v. Washington*, 466 U.S. 668 (1984).

[135] *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

[136] *Strickland,* 466 U.S. at 687.

-26-

An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal,[137] and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel.[138]  "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome."[139]

Ferrell raised these claims in an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B) in the state appeals court, which adjudicated them on the merits.[140]

a.    *Ineffective assistance of trial counsel for failing to object to opinion testimony*

Ferrell first argues that his appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for not objecting to Detective Dave Loading's testimony that he claims improperly bolstered the credibility of the complaining child victim.[141]  After setting forth the standard for appellate counsel ineffective-assistance claims under both Ohio and federal law, the state appellate court, the last state court to address the claim, opined:

> {¶ 7} Ferrell argues that his appellate counsel was ineffective for failing to raise two additional assignments of error. The first involves the testimony of Detective Dave Loading.

---

[137] *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983).

[138] *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

[139] *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

[140] *State v. Ferrell*, No. 100659, 2015 WL 1737616, 2015-Ohio-1446.

[141] ECF No. 1, Attachment 1 at 12-17.

Ferrell was denied effective assistance of appellate counsel when counsel failed to raise trial counsel's failure to object to improper opinion testimony by an expert witness, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution.

{¶ 8} Ferrell identifies the following two experts from Det. Loading's trial testimony:

A. Certainly not as long. But when I found that she was an active part of this case and I confirmed it, it was documented. I was ready to eventually pass the case on to the proper agency.

Q. Tell us what you mean by passing it on to the proper agency.

A. I initiated my work in this case because I wanted to make sure that it was proper jurisdiction, venue, that it really did happen. I did not want to pass it on to another jurisdiction just yet. Early on I had—it appeared that it could be Broadview Heights's case. I wanted to make sure I didn't pass it on before doing homework first. In my experience, there's nothing worse than passing on, finding out maybe it didn't belong there. So I did my homework prior to. When I found out that it was credible, that there was, you know, that it was really the jurisdiction of Broadview Heights, then I did pass it on.

* * *

Again, my position on this case was not the lead investigator. I wanted to make sure that it was a credible case. When I saw that it was and this number matched, then I was comfortable with passing it on to the other agency.

{¶ 9} There was no objection to this testimony. However, Ferrell contends the testimony was inadmissible and in violation of *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1120 (1989), and *State v. Stowers*, 81 Ohio St.3d 260, 1998–Ohio–632, 690 N.E.2d 881. In Boston, the court established that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Boston at syllabus. Such testimony is presumptively prejudicial and inadmissible because it " 'infringe[s] upon the role of the fact finder, who is charged with making determinations of veracity and credibility. * * * In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.' " *Id*. at 1240, quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).

{¶ 10} In *Stowers*, the Ohio Supreme Court recognized a fine line between an expert offering an opinion as to the truth of a child's statement and "testimony which is additional support for the truth of the facts testified to by the child, or which assists the factfinder in assessing the child's veracity." *Stowers* at 262–263, 690 N.E.2d 881. Whereas, the first is strictly prohibited, testimony falling under the second category is allowed. In Stowers, the court addressed the admissibility of expert testimony that the behavior of the victims was consistent with behavior observed in sexually abused children. The court found that it was admissible and did not violate *Boston*; instead, the court concluded the expert's testimony provided information to the jury that would allow it to make an "educated determination" regarding the ultimate issues in the case. Indeed, the court emphasized a distinction "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that the child has been abused." *Id*. at 262.

{¶ 11} Ferrell asserts that Det. Loading's statements served to improperly validate the victim's accusations. However, when the testimony is read in its proper context, it is evident that Det. Loading's statements were not related to the credibility of the victim's accusations but were offered to explain why the

-29-

investigation was forwarded from North Royalton to Broadview Heights.

{¶ 12} In order to prevail on an ineffective assistance of counsel claim, Ferrell must demonstrate that counsel's performance fell below an objective standard of reasonable representation, and that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient. *Id.* at 142, 538 N.E.2d 373, citing *Strickland*, 466 U.S. at 695–696, 104 S.Ct. 2052, 80 L.Ed. 674. There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142–143. Ferrell has not established a reasonable probability that this assignment of error would have been successful had it been raised by appellate counsel. Appellate counsel raised five assignments of error, including a challenge based on improper venue, an issue that was raised and preserved throughout the trial record. Pursuant to *Jones*, appellate courts should not second-guess counsel's discretion to raise stronger arguments and focus on key issues as a sound strategy rather than asserting every conceivable issue on appeal. Ferrell has not satisfied his burden to merit reopening of the appeal based on the first assigned error.[142]

Ferrell argues that the state court's decision was an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2).[143]  Claims of ineffective assistance of counsel, however, are mixed questions of law and fact.[144] Habeas courts review such claims, therefore, under AEDPA's "unreasonable application" prong, § 2254(d)(1).[145]

---

[142] *Ferrell*, 2015 WL 1737616, at **2-3.

[143] ECF # 1, Attachment 1 at 15-16.

[144] *Strickland,* 466 U.S.  at 698.

[145] *See, e.g., Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003).

-30-

Ferrell essentially repeats the arguments here that he presented to the state appeals court.[146]  He argues that the state appellate court incorrectly applied Ohio case law and Ohio appellate civil rules.[147]  The state court determined that the detective's testimony,  when read in context, did not violate Ohio law as set forth in *Boston* and *Stowers*.  It concluded that the detective's statement that "it was a credible case" related not to the victim's credibility, but to his practice of verifying charges before forwarding a case to another jurisdiction.[148]  As state courts are the final authority on state-law issues, I must defer to, and am bound by, the state court's interpretation of Ohio law on this issue.[149]

Moreover, the state appeals court reasonably determined that Ferrell's appellate counsel did not provide constitutionally ineffective assistance.  I agree with the court, which, citing *Strickland*'s "general presumption that trial counsel's conduct is within the broad range of professional assistance,"[150] determined that appellate counsel's decision not to raise an ineffective-assistance claim based on trial counsel's failure to object to the detective's statements was neither deficient nor

---

[146] *Compare* ECF # 1, Attachment 1 at 15-16, *with* ECF # 8, Attachment 1 at 183-86.

[147] ECF # 1, Attachment 1 at 15-16.

[148] *Ferrell*, 2015 WL 1737616, at *3.

[149] *See Estelle*, 502 U.S.  At 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Warner v. Zent*, 997 F.2d 116, 133 (6th Cir.1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law) (citation omitted).

[150] *Ferrell*, 2015 WL 1737616, at *3.  *See Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (citation omitted).

prejudicial.  As the state court observed, Ferrell has not demonstrated that such a claim would have been successful.  And, given the fact that appellate counsel raised five assignments of error, including the stronger venue claim, it is presumed sound appellate strategy to raise stronger arguments on appeal and forego asserting weaker ones.[151]

Thus, the state appellate court decision denying Ferrell's appellate counsel ineffective-assistance claim based on trial counsel ineffective assistance was neither contrary to, nor an unreasonable application of, *Strickland* and its progeny.

b.    *Trial-court error based on admission of social worker's testimony*

Ferrell also asserts that appellate counsel should have raised a claim regarding the trial court's admission of the social worker's testimony concerning her evaluation of the alleged victim's accusations.[152]  The state appellate court, again the last state court to address this claim, stated:

> {¶ 13} The second assignment of error that Ferrell contends his appellate counsel should have raised is that the trial court erred by allowing the social worker to testify about the sexual abuse investigation in violation of his due process rights. This argument requires a similar analysis of the law as the previous assigned error.
>
> {¶ 14} Ferrell alleges that the following portions of the social worker's testimony violated his due process rights:
>
> > A. Okay. Through our training, we are specially trained not to ask any type of leading questions. Basically how the interview starts out, you

---

[151] As the state court correctly recognized, if a petitioner fails to prove either deficiency or prejudice, his ineffective-assistance claim will fail.  *Strickland*, 466 U.S. at 687.

[152] ECF # 1, Attachment 1 at 17-24.

introduce yourself, explain your role and what your responsibility is, like to keep children safe. And then you spend some time just getting to know the child, like how old are you, do you go to school. Just basically what you like to do. There are many different tools we use to get the child to open up to us. [The victim] is older. She was 15 at the time, so she pretty much knew why I was there. I asked her, do you know why you're here today? And that's when she talked to me about what had happened.

Q. Was she able to provide details to you about why she was there?

A. Yes, she was. She was able to give explicit details to, you know, certain things that we look for in an interview to tell whether a child is, you know, has been coached because we've also been trained to identify if the child has been coached, led to say something, or if the child is just making it up to get themselves out of trouble.

[COUNSEL]: Objection.

THE COURT: Overruled.

A. There are things we look for to try to identify whether the child is being honest about what happened.

[COUNSEL]: Objection.

THE COURT: Overruled.

Q. Are those things you've learned in your training and your education?

A. Yes.

-33-

Q. During your interview with [the victim], did you detect any of those signs as warning signs that you're talking about?

A. No, I did not.

* * *

Q. Miss Cigoi, did you conduct any other interviews as it relates to this investigation?

A. I spoke with Holly Whalen multiple times about the situation because [the victim] was having problems. You know, it takes a little while to get the therapy in and she was having problems in school and adjusting.

Q. And other than that, did you take any other steps in this investigation?

A. Yes, I did get—did talk to Detective Strickler from Cleveland Sex Crimes and Detective Loading from North Royalton. I read through the interviews that were conducted at Cleveland Sex Crimes, the statement that was given in North Royalton, and all three statements were consistent with what she had told me when she was interviewed at Broadview Heights police station.

Q. And at the conclusion of your investigation, in all investigations, do you make any type of finding?

[COUNSEL]: Objection.

THE COURT: Overruled.

A. Yeah, we do—we make three types of findings. One is unsubstantiated, meaning there's no evidence that any sex abuse occurred. The second type of finding is indicated, meaning it's

-34-

our professional opinion that sex abuse occurred, but we don't have enough evidence to substantiate it. Substantiations are really hard because we either need to have some type of medical evidence, a confession by the alleged perpetrator, or credible eyewitness testimony.

Q. So what was your finding in this case?

[COUNSEL]: Objection.

THE COURT: Overruled.

A. It was indicated.

{¶ 15} In *Stowers*, the Ohio Supreme Court held, "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." Stowers, supra, at 261, 690 N.E.2d 881. This court has repeatedly recognized "that a social worker's interdepartmental determination of an allegation of abuse—such as, unsubstantiated, substantiated, or indicated—is acceptable, provided the social worker does not testify as to the truthfulness or credibility of the alleged victim." *State v. Jackson,* 8th Dist. Cuyahoga No. 92531, 2010–Ohio–3080, ¶ 17, citing *State v. Smelcer*, 89 Ohio App.3d 115, 623 N.E.2d 1219 (8th Dist.1993); *State v. Sopko*, 8th Dist. Cuyahoga No. 90743, 2009–Ohio–140; *State v. Whitfield*, 8th Dist. Cuyahoga No. 89570, 2008–Ohio–1090; *State v. Simpson*, 8th Dist. Cuyahoga No. 88301, 2007–Ohio–4301. In *Smelcer*, this court noted that "the Boston decision did not prohibit an expert from giving his or her opinion on whether sexual abuse occurred." Id. at 121, citing *State v. Cornell*, 8th Dist. Cuyahoga No. 59365, 1991 Ohio App. LEXIS 5664, 1991 WL 251667 (Nov. 27, 1991).

{¶ 16} While the social worker's testimony reports the agency's finding that sexual abuse of the victim was indicated, it does not offer any opinions on who committed the abuse. At no point during the social worker's testimony did she testify that she believed Ferrell was the perpetrator or was the person who

committed the abuse. The social worker testified repeatedly that her purpose in interviewing the victim was to assess his or her safety. In doing so, the social worker referred to the accused as the "alleged perpetrator."

{¶ 17} The social worker did not testify as to the veracity of the victim's accusations against Ferrell. Just as in *Smelcer*, the social worker in this case was not asked and she did not express any opinion about the victim's veracity. Instead, she testified about the interdepartmental determination regarding the allegation of abuse, which is permissible under the existing law. The case law that Ferrell relies upon is distinguishable either because it does not involve testimony regarding an interdepartmental determination or because the subject testimony involved medical expert opinions based solely on the victim's veracity. *E.g., State v. Schewirey*, 7th Dist. Mahoning No. 05 MA 155, 2006–Ohio–7054, ¶ 45 (medical doctor's opinion of sexual abuse based solely on his assessment of the child's veracity is impermissible); *State v. Pawlak,* 8th Dist. Cuyahoga No. 99555, 2014–Ohio–2175 (it was error to allow a witness to offer an opinion regarding the truth of the victim's accusations by asking the witness whether she believed the victim's allegations regarding the accused's inappropriate activity were true).

{¶ 18} Ferrell has not satisfied his burden of establishing a colorable claim of ineffective assistance of appellate counsel based on the errors he has presented for App.R. 26(B) review. Accordingly, his application for reopening is denied.[153]

Thus, the state appeals court's analysis follows that of Ferrell's other appellate counsel ineffective-assistance claim. The court first determined that the challenged testimony was admissible under Ohio law. It found the social worker's statement that sexual abuse was "indicated" did not constitute an opinion as to who committed the abuse, or the veracity of her accusations against Ferrell, but only whether abuse had "occurred." Based

---

[153] *Ferrell*, 2015 WL 1737616, at **3-5.

on this determination, as with Ferrell's other ineffective-assistance claim, the state court reasonably concluded that Ferrell could not establish that the claim likely would have been successful had counsel raised it, and counsel therefore was constitutionally deficient for failing to do so.  This claim, too, lacks merit.

## Conclusion

For the foregoing reasons, I recommend that the petition of John Ferrell for a writ of habeas corpus be dismissed in part and denied in part.

Dated: August 31, 2016                          s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[154]

---

[154] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).